## In re RIZAK.

District Court W. D. Pennsylvania.
March 6, 1928.

No. 73770.

Vincent R. Smith, of Greensburg, Pa., and George D. Wick, of Pittsburgh, Pa., for petitioner.

C. A. Bernhard, Asst. District Director of Naturalization, of Pittsburgh, Pa., opposed.

GIBSON, District Judge. George Rizak, of Monessen, Westmoreland county, this district has made application to the court for certificate of naturalization. Upon his appearance before the court, objection was made to his admission as a citizen on the ground that his declaration of intention to become a citizen had not been executed as required by law. Upon hearing, the following facts developed:

The pastor of a Greek Catholic Church in Monessen, from a period antedating in procedure the present case, had interested himself in seeing that his parishioners were naturalized. To that end he had conducted a naturalization school in his church. On December 20, 1924, he had assembled a class of about fifty of his parishioners, among them, George Rizak, for the purpose of having each of them make his declaration of intention to become a citizen. By previous arrangement, J. Arthur Thomas, prothonotary of Westmoreland county, and his deputy, T. L. Hunter, were present. The prothonotary had taken from his office in the courthouse at Greensburg, the county seat of Westmoreland county, the current declaration of intention volume furnished by the Department of Labor, containing certain declarations of aliens, and also certain other sheets, partly printed and partly blank, provided by the Department of Labor for the duplicate and triplicate declarations of aliens. The declaration of intention was signed by the applicant, and later the oath was administered by the prothonotary. At the time the declaration was signed and sworn to, as stated, the blank portions thereof had not been written in; but the applicant had prepared, and the prothonotary had before him, a filled preliminary form furnished by the Department which contained all the information which was subsequently inserted in the declaration, and the oath was taken as to the truth of the statements contained in this sheet and attached to the signed declaration. The declarations were later completed from the preliminary sheet and the seal of the court affixed thereto. When completed, they were recorded and copy returned to the declarant.

The oath was administered to the petitioner and other members of the class, after the office hours of the prothonotary's office in Greensburg were over for the day and after the door of the office had been closed. There was no possibility of any duplication in the numbers of the declarations, by reason of some being taken at Greensburg, while other declarations were being taken at Monessen.

The Naturalization Examiner contends that the declaration is invalid because not taken within the office of the prothonotary at the county seat, or in open court.

He further alleges the declaration to be void by reason of the fact that it was not fully filled in at the time it was executed.

The following is quoted from (sec. 4 of the Act of June 29, 1906, 34 St. L. pt. 1, p. 596 [8 USCA §§ 372, 373]):

"That an alien may be admitted to become

450

a citizen of the United States in the following manner and not otherwise:

"First. He shall declare on oath before the clerk of any Court authorized by this act to naturalize aliens, or his authorized deputy, in the district in which such alien resides, two years at least prior to his admission, and after he has reached the age of eighteen years, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject. And such declaration shall set forth. * * *"

It will be noted that the section quoted is silent in respect to the locality of the declaration. The act simply requires that the intention be declared "on oath before the Clerk of any Court authorized by this Act to naturalize aliens. * * *"

As we view the contention, its force must be weighed by the general powers of the prothonotary. If his power, under the state law, is limited to the administration of oaths in his office or in open court, then his administration of the oath to the present applicant was entirely without force and effect, and the declaration is void. On the other hand, if the prothonotary has a general power to administer oaths within his county, then the declaration is valid in so far as the locality objection is concerned.

The Act of Assembly of March 22, 1859, P. L. 194 (Purd. Dig. vol. 3, p. 3672; Pa. St. 1920, § 17412) defines the powers of prothonotaries and clerks of court to administer oaths, as follows:

"The prothonotaries and commissioned clerks of Courts of this commonwealth shall have a general power to administer oaths and affirmations: (1) Provided, That no prothonotary or clerk shall be compelled to administer the same, in any matter not pertaining to the proper business of his office."

It will be noticed that the statute does not confine the power to administer oaths to the office of the prothonotary or to open court. Nor has the practice in Pennsylvania confined the powers of the prothonotary to the courtroom or his office. For example, see Polhemus' Appeal, 32 Pa. (8 Casey) 328. In that case, one Courtright, after office hours, came to the prothonotary's home and delivered to the latter a confession of judgment against one McMillen. The prothonotary accepted the papers and marked them filed as of the date of their receipt, and later recorded them as of that date. On the next day Polhemus filed his lien; and later he attacked Courtright's judgment on account of the time and locality of the delivery of the papers to the prothonotary. The Supreme Court of Pennsylvania sustained Courtright's judgment. Inter alia, it said:

"But we cannot say he was incapable of performing a valid official act, even at his house and so late at night [11 p. m.]. He chose to do it, and having done it, a subsequent creditor has no right to complain of it, at least in a question of distribution."

By analogy, if a judgment may be received and filed by the prothonotary away from his office, an affidavit could be administered by him, and the papers connected therewith be filed.

It is urged, however, by the Naturalization Examiner, that the practice is bad; that, if the prothonotary may be allowed to administer the oaths to the declarants of intention in a church, he must be allowed to do the same thing in a pool room or other like place. There is considerable force in this argument. It may be that the prothonotary will lend himself to undignified practices, and thus detract from the solemnity that is perhaps desirable in the declaration of an alien of his intention to change his allegiance. But this possibility cannot be taken away by the court adding something to the statute which Congress has not put into it. Congress has attached some formality to the admission of an alien to citizenship, by providing that it shall be in open court; and, if it thought formality necessary in connection with the declaration of intention, it would undoubtedly have provided for it. By act prior to the present statute prescribing the practice, the declaration of intention was required to be executed before the court. The act now in force has omitted that requirement, and has provided that the declaration be made "before the Clerk."

Our attention has been called to several cases dealing with the execution of the declaration of intention. Several of them hold that execution of the declaration is valid although not attested before the clerk in his office or in the courtroom. See opinion of Judge Rice in Re Boso, 6 Kulp (Pa.) 83 (Luzerne Co.), and Andres v. Judge of Circuit Court, 77 Mich. 85, 43 N. W. 857, 6 L. R. A. 238. Others hold such declarations to be invalid. See In re Santo Scola, 8 Pa. Co. Ct. R. 344. The Naturalization Examiner has also cited In re Langtry (C. C. A.) 31 F. 879. In the last-mentioned case it will be noted that Mr. Justice Field has handed down

no decision, but in a very informal way expressed some doubt as to the validity of a declaration not made in the clerk's office or in open court. In considering it, the peculiar facts of the case must not be overlooked. The learned and sensitive justice could have taken no great amount of pleasure in having his court featured in the advertising scheme of the "Jersey Lily," and his feeling in this respect, as well as his feeling that the act of the clerk tended to institute an undesirable practice, led to his somewhat unusual declaration.

The Examiner has further urged that the declaration was invalid because the blanks of the form were unfilled when the paper was signed and sworn to. The prothonotary has emphatically stated that all the subject-matter of the declaration, as filled, was included in the oath administered to the declarant. Such being the case, the subsequent affixing of the seal and filling of the blanks would not render the declaration invalid, in our opinion.

It is admitted by the Naturalization Examiner that the present applicant, as well as each of the other members of the naturalization class who made their declarations at the same time and place, is qualified in all respects, other than the alleged informality of the declaration, for admission to citizenship. Such being the case, and being of opinion that the declaration was not invalid, we shall make an order for the admission of the applicant. Let such order be submitted.